UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANAMARIE NARDELLI,

    Plaintiff,

v.                                                    Case No. 8:22-cv-132-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income (SSI).[1] Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by substituting his opinion for all the medical opinion evidence and by mechanically applying the Medical-Vocational Guidelines, often referred to as "the Grids." As the ALJ's decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    *I.*    *Background*

Plaintiff, who was born in 1971, claimed disability beginning May 7, 2012 (Tr. 233). She was 41 years old on the alleged onset date. Plaintiff obtained a high school education, and her past relevant work experience included work as a telephone sales representative and a residence leasing agent (Tr. 258, 262-77). Plaintiff alleged

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

disability due to diabetes, high blood pressure, borderline personality disorder, depression, and anxiety (Tr. 257).

Given her alleged disability, Plaintiff filed an application for SSI (Tr. 233-42). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 90-129, 134-56). Plaintiff then requested an administrative hearing (Tr. 157-59). Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff appeared and testified (Tr. 32-57). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-31).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since June 11, 2020, the application date (Tr. 18). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: diabetes mellitus, hypertension, hypothyroidism, and obesity (Tr. 18). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21). The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform the full range of light work (Tr. 21). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence,

and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 22).

Considering Plaintiff's noted impairments, the ALJ determined that Plaintiff could perform her past relevant work as a telephone sales representative and a residence leasing agent, as such work did not require the performance of work-related activities precluded by Plaintiff's RFC (Tr. 25). In addition to her past relevant work, the ALJ alternatively concluded that other jobs existed in significant numbers in the national economy that Plaintiff could perform based on Plaintiff's age, education, work experience, and RFC (Tr. 26). In reaching that conclusion, the ALJ relied upon Medical-Vocational Rules 202.21 and 202.14 (Tr. 27). Accordingly, based on his findings, the ALJ found Plaintiff not disabled (Tr. 27). Given the ALJ's decision, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-11, 226-28). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

  II. *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological

abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4)(i)-(iv). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate

4

to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

   III.   Discussion

Plaintiff argues that the ALJ erred by improperly substituting his judgment for that of the medical opinions of record.  In short, Plaintiff contends that the ALJ was not qualified to interpret raw medical data in functional terms, and no medical opinion supported the ALJ's RFC determination.  According to Plaintiff, the ALJ impermissibly relied upon his own interpretation of the medical data of record and

improperly substituted his interpretation in place of the opinions of state agency medical consultants as to Plaintiff's mental impairments and limitations. Mainly, Plaintiff contends that, because both of the state agency medical consultants opined that Plaintiff experienced moderate limitations in interacting with others and in concentration, persistence, and pace and because a prior ALJ issued a decision – which Plaintiff concedes is not binding on the ALJ in this matter – finding that Plaintiff's depression, anxiety, and PTSD were severe impairments and thus limiting Plaintiff to unskilled work with no fast-paced production or quota-driven work and occasional interaction with the public, coworkers, and supervisors (Tr. 64-65), this ALJ improperly rejected the medical opinions based on the ALJ's interpretation of medical evidence, which the ALJ is not qualified to do.[2] To the extent that the ALJ held any

---

[2] The prior unfavorable administrative decision covered a period of disability from May 7, 2012, to January 10, 2020 (the alleged onset date to the date of the prior administrative decision), finding that Plaintiff was not disabled during that period. Plaintiff argues that "[a]lthough this decision is not binding on the Administrative Law Judge in the current case, it should not be ignored[,] and some weight should be given to that finding" (Doc. 20, at 8). Plaintiff filed the current SSI application in June 2020, approximately six months after the prior ALJ rendered a decision, and she alleges no worsening of her condition from the date of the prior decision. In considering the current claim for the period of disability post the prior administrative decision, "the SSA considers the issue of disability with respect to the unadjudicated period *to be a new issue* that prevents the application of administrative *res judicata*." *Spence v. Comm'r of Soc. Sec.*, No. 21-12909, 2022 WL 1415888, at *2 (11th Cir. May 4, 2022) (citation omitted; emphasis in original). As such, the SSA considers the facts and issues in the subsequent disability claim for the unadjudicated period *de novo* and will not adopt findings from the prior decision in determining whether the claimant is disabled as to the unadjudicated period. *Id.* Accordingly, as the prior ALJ's decision had no preclusive effect on the ALJ's determination of the unadjudicated period at issue in this matter, the ALJ did not need to rely upon or provide any deference to the prior ALJ's findings, other than to accept as *res judicata* that Plaintiff was not disabled prior to January 10, 2020, the date of the prior administrative decision.

reservations regarding the state agency medical opinions, Plaintiff asserts that the ALJ should have employed the services of a medical expert.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work.  *See* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945.  To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms.  20 C.F.R. § 416.945(a)(1).  In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each.  20 C.F.R. §§ 416.920(e), 416.945(a)(2) & (e); *see Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (*per curiam*) ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC"); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").

Under the regulations, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source.  20 C.F.R. § 416.920c(a).  Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant,

and the area of the medical source's specialization. 20 C.F.R. § 416.920c(1)-(4). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 416.920c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 416.920c(b)(1). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. § 416.920c(c)(3)(i)-(v), (4) & (5). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other factors.[3] 20 C.F.R. § 416.920c(b)(2).

---

[3] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 416.920c(b)(3).

Notably, a physician's opinion as to what a claimant can still do despite his or her impairments differs from an ALJ's assessment of a claimant's RFC. *See* 20 C.F.R. §§ 416.913(a), 416.945, 416.946; Social Security Ruling (SSR) 96-5p, 1996 WL 374183 (July 2, 1996). Indeed, SSR 96-5p explains:

> Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing: A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).
>
> ***
>
> A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider together with all of the other relevant evidence (including other medical source statements that may be in the case record) when assessing an individual's RFC. Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the RFC assessment.

SSR 96-5p, 1996 WL 374183, at *4 & *5. The task of determining a claimant's RFC and ability to work thus rests with the ALJ, not a medical source. *See Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016);[4] *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("Contrary to the district court's reasoning, the ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC … Indeed,

---

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

the pertinent regulations state that the ALJ has the responsibility for determining a claimant's RFC."); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors."). To reiterate, though an ALJ may not take on the role of doctor, the final responsibility for determining the RFC remains with the Commissioner, not a physician. *See Leslie v. Comm'r of Soc. Sec.*, No. 22-10676, 2022 WL 4476661, at *4 (11th Cir. Sept. 27, 2022).

Here, the ALJ provided a detailed discussion of Plaintiff's mental impairments at step two of the sequential analysis, including a discussion of the medical opinions (Tr. 18-21). Initially, the ALJ found that Plaintiff's bipolar disorder, cannabis use disorder, alcohol use disorder in sustained full remission, and cocaine use disorder in sustained full remission all constituted non-severe impairments because, considered singly and in combination, they did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities (Tr. 18). The ALJ also discussed Plaintiff's allegations of disability due to borderline personality disorder, depression, and anxiety (Tr. 18-19). The ALJ acknowledged Plaintiff's complaints that she primarily experienced anxiety in public, around people and strangers, and in crowded or closed spaces and that she had trouble concentrating, completing tasks, remembering, understanding, following instructions, getting along with others, and managing stress and changes (Tr. 18). Nevertheless, the ALJ found Plaintiff's subjective complaints at odds with her reported ability to perform a wide range of activities of daily living, her limited treatment without any medication treatment, and

lay observations from field office personnel regarding no perceptible difficulties in understanding, being coherent, concentrating, talking, and answering (Tr. 18-19). The ALJ likewise found such complaints at odds with the medical evidence of record, which confirmed that Plaintiff possessed essentially unremarkable function on longitudinal mental status examinations during both psychological and physical examinations (Tr. 19). Given the relatively benign medical findings, the ALJ concluded that Plaintiff experience no limitation in understanding, remembering, or applying information; mild limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; and no limitation in her ability to adapt or manage herself (Tr. 19).[5] As the ALJ found that Plaintiff's mental impairments caused no more than mild restrictions in any functional area, the ALJ properly concluded that Plaintiff's mental impairments were not severe. *See* 20 C.F.R. § 416.920a(d)(1).

Thereafter, the ALJ discussed the medical opinions of record pertaining to Plaintiff's mental impairments and limitations, including the opinions of the state

---

[5] Agency regulations require a "special technique" be used by the ALJ when evaluating mental impairments. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); 20 C.F.R. § 416.920a. Essentially, this technique requires an assessment regarding how the claimant's mental impairments impact four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 416.920a(c)(3). In rating the degree of limitation, the SSA employs a five-point scale in the functional areas: none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c)(4). When considering a claimant's mental impairments, the ALJ must incorporate into the written decision the pertinent findings and conclusions based on the technique and must make a specific finding as to the degree of limitation for each of the functional areas. *Moore*, 405 F.3d at 1213-14; 20 C.F.R. § 416.920a(e)(4). Here, the ALJ did so.

agency psychological consultants (Tr. 20). Under the regulations, an ALJ need not adopt any prior administrative medical findings but must consider medical evidence from federal and state agency medical consultants, as such "consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 416.913a(b)(1). Though state agency medical consultants are considered highly qualified and experts, nothing in the revised regulations requires an ALJ to find opinions from state agency medical consultants persuasive or more persuasive than a treating or an examining medical source. *See* 20 C.F.R. §§ 416.913, 416.920c. Here, in considering the medical opinions, the ALJ stated:

> First, I am not persuaded by the assessments of the State agency psychological consultants that the claimant is limited to simple routine work tasks with limited social interaction. Although the consultants internally support these assessments with references to the evidence, these assessments are not consistent with the evidence as a whole. This is because the assessments largely refer to the claimant's subjective reports throughout the record, rather than any objective medical evidence. To that end, the claimant subjectively reported psychological symptoms, but did not demonstrate any corresponding objective abnormalities or deficits on examinations. To the contrary, the claimant generally demonstrated entirely benign mental status and cognitive function on mental status examinations both before and during the relevant period at issue, with only some rare and modest abnormalities, like reduced insight and judgment. Otherwise, she consistently demonstrated adequate social functioning, attention, and concentration, which is highly inconsistent with the state agency consultants' opinions. Thus, these assessments are clearly inconsistent with the objective medical evidence[] and are not persuasive.
>
> To the extent that it is an opinion, I am also not persuaded by the statement of the psychological consultative examiner in October 2020 that the claimant's mental health symptoms appeared to be "severely" impacting the claimant's activities of daily living, vocational performance, and interpersonal interactions. This statement also appears to be based entirely upon the claimant's subjective characterization of her

symptoms rather than any objective medical evidence. To that end, this statement is significantly unsupported by, and inconsistent with, the evaluator's own findings during the mental status examination which showed that the claimant possessed essentially normal mental status and cognitive function. For example, the consultative examiner found "good" mood, intact memory, adequate concentration and attention, appropriate social interaction, and adequate insight and judgment. Moreover, this statement is inconsistent with the other medical evidence of record, including a prior psychological consultative evaluation confirming normal mental status findings with the exception of poor insight and judgment, and subsequent primary care treatment notes confirming the claimant's denial of psychological symptoms and normal performance on neuropsychiatric examination. Accordingly, I am not persuaded that the claimant's mental health symptoms "severely impact" her functioning.

(Tr. 20) (internal citations omitted).

As the ALJ discussed, the medical findings simply did not support the state agency psychological consultants' opinions that Plaintiff would experience moderate limitations in interacting with others and in concentration, persistence, and pace (Tr. 20, 95-100, 113-25). For example, in April 2019, Plaintiff presented for a physical consultative evaluation with Abraham Khan, M.D., reporting a history of depression, PTSD, and borderline personality disorder and some related symptoms (Tr. 369-73). Upon examination, however, Plaintiff appeared her stated age, was in no acute distress, was alert with good eye contact and fluent speech, had an appropriate mood, had clear thought processes, showed normal memory and good concentration, and was oriented to time, place, person, and situation (Tr. 19, 371-72).

Around the same time, Plaintiff reported for a psychological consultative evaluation with Steven N. Kanakis, Psy.D., indicating she was applying for disability benefits due to PTSD, panic attacks, bipolar disorder, alcoholism, and drug addiction

13

(Tr. 19, 378-80).  Dr. Kanakis indicated that Plaintiff appeared to be about her stated age, her appearance was neat with good personal hygiene, she related in an appropriate manner and was accessible, her facial expression was normal and responsive with good eye contact, she displayed no signs of distress during the interview, her mood was calm, she displayed a full range of affect, her energy level appeared normal, her speech was normal and spontaneous, her thought processes were logical and coherent, no evidence of a thought disorder appeared at the time of the evaluation, she admitted a history of suicidal ideations but denied any current suicidal ideations or plans, her intelligence appeared to fall within the average range, her general fund of knowledge was good, her ability to solve simple arithmetic problems was good, she had intact recent and remote memory, her attention was good, her concentration was fair, and she was oriented in all spheres, although her insight and judgment were believed to be fair to poor (Tr. 379-80).  Dr. Kanakis assessed Plaintiff with cannabis use disorder, alcohol use disorder in sustained full remission, and cocaine use disorder in sustained full remission and concluded that Plaintiff would benefit from involvement with Alcoholics Anonymous/Narcotics Anonymous and outpatient substance abuse counseling, with any underlying psychological disorders being evaluated once Plaintiff reached some level of sobriety (Tr. 380).  According to Dr. Kanakis, Plaintiff's prognosis was guarded, but he opined that she could manage her own finances, as demonstrated by her ability to perform simple arithmetic problems and her reports of managing her own finances at that time, and she was not at risk of suffering decompensation in a work-like setting (Tr. 380).

Similarly, as the ALJ discussed, at a second psychological consultative evaluation in October 2020 with Nicholas Gehle, Psy.D., Plaintiff reported that she was seeking disability based on physical impairments and anxiety, depression, and borderline personality disorder (Tr. 19, 339-42). During the evaluation, Plaintiff was able to answer all questions presented and to provide specific information and dates without difficulty, so she appeared reliable and accurate, and additionally showed good eye contact, displayed a positive attitude, showed positive and appropriate cooperation and effort, showed normal affect, and demonstrated unremarkable behavior (Tr. 339-40). Plaintiff reported that she was currently undergoing mental health treatment that she believed had been helpful (Tr. 340). Based on Plaintiff's account of present mental health conditions, Dr. Gehle characterized Plaintiff's current level of mental health symptoms as severe (Tr. 340). Notwithstanding, Dr. Gehle documented a wide range of reported daily activities that Plaintiff could perform, including cooking, cleaning, watching television, bathing independently, dressing independently, toileting independently, moving around without assistance, driving independently without difficulty, preparing food without assistance, completing basic household chores without assistance, managing money, paying the bills, and completing the grocery shopping independently (Tr. 340). Dr. Gehle also noted that Plaintiff was alert, oriented to person, place, situation, and time; did not display any significant problems with motor functioning; displayed unremarkable rate and quality of speech; speech was relevant, coherent, and logical; showed adequate attention and concentration, attending to the evaluator's questions throughout the

interview without distraction and was able to complete tasks of alphabetic and numeric reiteration without errors; mental flexibility was adequate; no significant difficulties in processing speed occurred; receptive and expressive language appeared adequate; immediate and remote memory were adequate; mental computation was adequate; social skills were fair; abstract reasoning was adequate; judgment related to self-care social problem-solving was adequate; insight was adequate; overall intelligence was average; general thought processes were coherent, logical, and goal directed; thought form and content were age appropriate and unremarkable; had two suicide attempts, most recently at 18, but no suicidal or homicidal ideations at the time of evaluation; had hallucinations in the past but had not experienced them in 23 years; and denied experiencing delusions presently or in the past (Tr. 341). Despite the unremarkable findings on examination and Plaintiff's reports of extensive daily activities, Dr. Gehle diagnosed Plaintiff with unspecified bipolar and related disorder, with moderate anxious distress, and concluded that Plaintiff's mental health symptoms based on report and clinical observations appeared to severely impact Plaintiff's activities of daily living, vocational performance, and interpersonal interactions (Tr. 342). Dr. Gehle found Plaintiff's prognosis poor but believed she could manage benefits and financial decisions (Tr. 342).

      Beyond that, the ALJ also discussed Plaintiff's other treatment notes that supported his findings that Plaintiff did not suffer from a severe mental impairment and that the medical opinions were not persuasive, including a primary care treatment note from June 2021 indicating that, though Plaintiff indicated no psychological

symptoms except the loss of pleasure from usual activities, Plaintiff presented with entirely normal findings upon examination (Tr. 19, 366-67). Given the ALJ's thorough discussion of the mental health evidence and the substantial evidence cited by the ALJ in support of his findings, the ALJ did not err in his consideration of the medical opinions nor improperly found Plaintiff's mental health impairments non-severe. As the Commissioner asserts, Plaintiff bore the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).

To prove the existence of such disability, Plaintiff had to furnish medical and other evidence rather than simply relying on conclusory statements of pain or other symptoms or upon diagnoses alone. 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(D) & (H)(i); *see* 20 C.F.R. § 416.929(b) ("Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."). Indeed, "[d]iagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings." *Carnes*, 936 F.2d at 1218 (citations omitted). "Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) (*per curiam*). Moreover, the receipt of mental health treatment and medication prescribed for mental impairments does not lead to a finding that an individual is limited by his or her mental impairments in the ability to

work. *See Smith v. Comm'r of Soc. Sec.*, 501 F. App'x 875, 879 (11th Cir. 2012) (concluding that, though the record indicated a history of anxiety and depression for which the claimant was prescribed medication, nothing in the record indicated that the claimant experienced any effects from the mental impairments that could be expected to interfere with her ability to work). Instead, the severity of a medically ascertained impairment is measured in terms of in terms of its effect upon ability to work not by deviation from purely medical standards of bodily perfection or normality. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

In this instance, Plaintiff failed to meet her burden of providing evidence of disabling mental impairments. Rather, the ALJ correctly found that, although Plaintiff was diagnosed with mental impairments and received some treatment for those impairments, neither the medical evidence of record nor the medical opinions supported a finding of disability. As the ALJ properly considered Plaintiff's mental impairments and the medical opinions of record, applied the appropriate legal standards, and provided substantial evidence in support of his findings, remand is unwarranted.[6]

---

[6] Remand is also unwarranted as to Plaintiff's second argument. Essentially, Plaintiff asserts that, because the ALJ improperly failed to include non-exertional limitations in the RFC, the ALJ erred by mechanically applying the Grids. Plaintiff therefore predicates her argument as to the misapplication of the Grids upon her argument that the ALJ improperly omitted non-exertional limitations in setting forth Plaintiff's RFC. Since the ALJ at step four properly considered the medical opinions and Plaintiff's mental impairments and limitations in determining that Plaintiff could perform her past relevant work, the ALJ did not need to make this alternative finding at step five. As her first argument fails, so too does her second argument.

## IV. Conclusion

For the foregoing reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence. Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 22nd day of March, 2023.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of Record